| | |
|---|---|
| In re<br><br>METROPOLITAN MORTGAGE &<br>SECURITIES, CO., INC., and<br>SUMMIT SECURITIES, INC.,<br><br>Debtors. | Case No. 04-00757<br>Bankr. E.D. Wash.<br>Chapter 11 |
| SUMMIT CREDITORS' TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>HAWAII FOREST<br>PRESERVATION, LLC, et al.,<br><br>Defendants. | Adv. Pro. No. 09-90020<br><br><br>Re: Docket No. 198 |

# MEMORANDUM OF DECISION ON
# MOTION TO DISQUALIFY COUNSEL

This is a mortgage foreclosure proceeding involving multiple mortgages, properties, mortgagees, mortgagors, and property owners. One of the property owner defendants, Beverly Ing Lee, seeks to disqualify a law firm that recently appeared for one of the mortgagees. Ms. Lee says that she previously retained the same law firm to represent her in a substantially related matter. The law firm

admits that it previously represented Ms. Lee but denies that there is a substantial relationship between its representation of Ms. Lee and this matter.

Although the case is a close one and there is no evidence that the law firm has engaged in any impropriety, I conclude that there is a potential appearance of impropriety and therefore the firm is disqualified.

Ms. Lee and her family own various pieces of property, including an undeveloped lot in Lanikai. Ms. Lee testified that, at some point in 2007, she learned that the Lanikai property was subject to a mortgage in favor of Finance Factors, Limited, to secure a multi-million dollar debt. Ms. Lee learned that the mortgage had been signed pursuant to a power of attorney executed by her mother (who was then about 97 years old). Ms. Lee's mother denied signing the power of attorney, and Ms. Lee contends that it was forged. If proven, this would invalidate Finance Factors' mortgage on the Lanikai property.

On October 3, 2007, Ms. Lee and her daughter met with Robert Bruce Graham, Jr., an attorney with Ashford & Wriston, to discuss her concerns about the family properties. The meeting lasted about ninety minutes. Ms. Lee and Mr. Graham have different recollections about the topics covered during that meeting. After the meeting, Mr. Graham prepared and sent to Ms. Lee a retention agreement that said the firm's representation of Ms. Lee "concerns your efforts to

U.S. Bankruptcy Court - Hawaii   #09-90020   Dkt # 236   Filed 05/18/10   Page 2 of 7

recover family properties, resolve conflicting claims and debts affecting them, and to protect yourself against personal liability." Ms. Lee countersigned the agreement and paid a retainer of $5,000.00.

Ashford & Wriston did little work for Ms. Lee. The firm retained an accounting firm on behalf of Ms. Lee's mother to assist with the mother's tax affairs. Mr. Graham says (and Ms. Lee does not deny) that Ms. Lee gave the firm no other specific assignments. In April 2009, Mr. Graham terminated the representation and refunded $3,879.96 of the retainer to Ms. Lee. Ms. Lee did not object to the termination of the representation.

On February 23, 2010, Ashford & Wriston made a formal appearance in this adversary proceeding on behalf of Finance Factors. Since then, Ashford & Wriston has served deposition notices for Ms. Lee and members of her family.

An attorney's duty of loyalty continues after an engagement is completed. The duty of loyalty to a former client may preclude the attorney from undertaking a new representation:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Haw. R. Prof. Conduct 1.9(a). There is no dispute that Ms. Lee is a former client

U.S. Bankruptcy Court - Hawaii   #09-90020   Dkt # 236   Filed 05/18/10   Page 3 of 7

of Ashford & Wriston,[1] that Finance Factors' interests in this litigation are materially adverse to Ms. Lee's, and that Ms. Lee has not consented to Ashford & Wriston's representation of Finance Factors. The only issue is whether this matter is "substantially related" to the matter in which Ashford & Wriston represented Ms. Lee.

"Substantiality is present if the factual contexts of the two representations are similar or related." Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980). In determining substantiality, the court looks to the scope of the representation.

> [T]he underlying concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought. The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. . . . <u>The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney</u>. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification.

Id. at 999 (emphasis added). The Hawaii Supreme Court has followed Trone's analysis. Otaka, Inc., v. Klein, 71 Haw. 376, 386, 791 P.2d 713, 719 (1990).

In this case, Mr. Graham himself described the scope of the representation broadly in the retention agreement he drafted. Ms. Lee's current dispute with

---

[1] In re Johore Inv. Co. U.S.A., Inc. 157 B.R. 671 (D. Haw. 1985), is inapplicable because the court's decision turned on its conclusion that no attorney-client relationship was formed.

4

Finance Factors is within that scope.

Ashford & Wriston suggests that the actual scope of the representation was not as broad as the retention letter indicates. Ashford & Wriston evidently expected that it would undertake specific tasks only as Ms. Lee gave the firm more specific instructions. This suggests that the firm was retained only to do specific tasks that were to be outlined in the future, rather than for the broad purposes laid out in the retention agreement. The terms of the retention letter do not support this argument. If Ashford & Wriston had this understanding, it could and should have drafted the retention letter differently.

Ashford & Wriston argues that the matters are not substantially related because it did not actually work on the matters that are in dispute in this adversary proceeding. The focus of the inquiry, however, is on the "scope of the representation engaged in by the attorney," Trone, 621 F.2d at 999. It should not matter that the attorney terminates the representation before the originally agreed scope of the work is completed, so long as there is the "appearance of the possibility that the attorney may have received confidential information . . . ." Id. (emphasis added).

An exception to this rule applies when the retention is terminated at a very early stage.

5

U.S. Bankruptcy Court - Hawaii   #09-90020   Dkt # 236   Filed 05/18/10   Page 5 of 7

> If [the client's] earlier professional relationship with [the law firm] had been aborted before any significant work had been done . . . and before any discussions with the client other than the bare preliminaries of the representation were explored, we might now have a different case.

Trone, 621 F.2d at 1000.

Although Ashford & Wriston's representation of Ms. Lee ended before much work was done, the "bare preliminaries" exception does not apply. Ms. Lee and Mr. Graham had a fairly lengthy meeting at which Ms. Lee discussed her situation and Mr. Graham advised her about which problem to attack first and how to address it. These discussions went beyond the "bare preliminaries."

I make no finding that the law firm actually received any confidential information from Ms. Lee or that it has engaged in any improper conduct. (Mr. Graham's account of his meeting with Ms. Lee seems more plausible to me than Ms. Lee's.) The appearance of a potential breach of trust, however, is sufficient to warrant disqualification.

> Disqualification does not depend upon proof of the abuse of confidential information. Because of the sensitivity of client confidence and the profession's institutional need to avoid even the appearance of a breach of confidence, disqualification is required when lawyers change sides in factually related cases.

Trone, 621 F.2d at 1001. The problem of appearances is particularly relevant in this case because Ashford & Wriston has filed a notice of Mrs. Lee's deposition.

6

The deposition will likely cover topics that Mrs. Lee contends were within the scope of her prior engagement of the firm. This creates an appearance that Ashford & Wriston has changed sides in factually related matters. Although it is a close case, the client should have the benefit of the doubt.

Therefore, the motion to disqualify Ashford & Wriston is GRANTED.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 05/18/2010

7

U.S. Bankruptcy Court - Hawaii   #09-90020   Dkt # 236   Filed  05/18/10   Page 7 of 7